UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                  :

DANIEL FORTE,                      :
                  :

             Plaintiff,     :

                  :
       - against -        :
                  :

THE CITY OF NEW YORK, *et al.*   :
                  :

            Defendants.  :
                  :

-----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __9/28/2018__

16-CV-560 (VSB)

**OPINION & ORDER**

Appearances:

Daniel Forte
Stormville, New York
*Pro se Plaintiff*

Daniel L. Passeser
Nicholas D. Manningham
Ben N. Kurivilla
Fayola N. Alibey
New York City Law Department
New York, New York
*Counsel for NYC Defendants*

John J. Walsh, II
Paul E. Svensson
Hodges Walsh & Messemer, LLP
White Plains, New York
*Counsel for White Plains Defendants*

VERNON S. BRODERICK, United States District Judge:

      Pro se Plaintiff Daniel Forte brings this action against Defendants City of New York,

City of White Plains, Detectives Brian McNellis, Edward Garrity, Steven Nieves, Michael

McCready, Timothy Gentz, Sergeants Thomas McLoughlin, John Tierney, Police Officers

Kenneth Tallevi, Cunningham, and John Doe (collectively, "Defendants") alleging violations of

42 U.S.C. § 1983 for unlawful search and seizure, malicious prosecution, false arrest, deprivation of the right to a fair trial, fabrication of evidence, and conspiracy to violate civil rights. Before me are the motions to dismiss of Defendants City of White Plains, Police Officer Tallevi, and Police Officer Cunningham (collectively, the "WP Defendants") and Defendants Detectives Nieves, McCready, McLaughlin, Gentz, and Sergeant Tierney (the "Moving NYC Defendants"). For the reasons stated below, the WP Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART and the Moving NYC Defendants' motion to dismiss is GRANTED.

## I.     **Background**[1]

At approximately 6:00 p.m. on April 24, 2013,[2] Plaintiff was at his mother's house in White Plains with his mother and several other individuals. (SAC ¶ 12.)[3] Plaintiff was sitting on the couch watching television with a friend when his mother received a phone call from a friend saying that there were several police officers in the stairwell near her apartment. (*Id.* ¶¶ 13–14.) Plaintiff's mother went out to investigate. (*Id.* ¶ 14.)

A few moments later, Plaintiff heard the doorbell ring. (*Id.* ¶ 15.) He asked who was there, but no one answered, so he looked through the peephole and saw only his mother. (*Id.*) She yelled to him "it['']s me mommy," so Plaintiff opened the door. (*Id.* ¶¶ 15–16.) When Plaintiff opened the door, approximately eight New York City Police Department ("NYPD") detectives, named as Defendants here, emerged from blind spots. (*Id.* ¶ 16.)

---

[1] The following factual summary is drawn from the allegations of the Second Amended Complaint, (Doc. 86), unless otherwise indicated, which I assume to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My references to these allegations and exhibits should not be construed as a finding as to their veracity, and I make no such findings.

[2] The Second Amended Complaint states that the relevant events occurred on April 24, 2017. (SAC ¶ 12.) However, since the allegations in the prior complaints all assert the events occurred on April 24, 2013, and Plaintiff's representations in his opposition also reference that date, I understand this to be a typographical error and will refer to April 24, 2013 throughout this Opinion & Order.

[3] "SAC" refers to the Second Amended Complaint, filed August 9, 2017. (Doc. 86.)

Defendants McNellis and Garrity were in front of the other detectives standing in the doorway of the apartment. (*Id.* ¶ 17.) McNellis and Garrity—while standing in the doorway of the apartment—asked Plaintiff if he was Daniel, and Plaintiff said yes. (*Id.*) Plaintiff's mother then walked into the apartment and said that the detectives wanted to speak to him about a phone, and that he was not in any trouble. (*Id.*) McNellis then asked Plaintiff if he owned a cell phone. (*Id.* ¶ 18.) Plaintiff answered yes, showed McNellis his cell phone, McNellis took Plaintiff's cell phone, placed it in his pocket, and asked Plaintiff if he would come with them because they "needed to talk" to him. (*Id.*) Plaintiff asked "about what," and McNellis responded "nothing serious, just about the phone." (*Id.* ¶ 19.) Plaintiff told McNellis that he could not have police contact because he was on parole, and that they could discuss whatever they needed to discuss where they all stood. (*Id.* ¶¶ 19–20.) McNellis insisted they speak in private, but Plaintiff refused, and "backed up out of arms reach." (*Id.* ¶ 20.) McNellis, Garrity, and McLoughlin then walked into the apartment without Plaintiff's consent and were followed by other unidentified NYPD detectives. (*Id.*)

Once he was inside, McNellis asked Plaintiff again to step outside. (*Id.* ¶ 21.) Plaintiff asked if he was under arrest, and McNellis answered that he was not. (*Id.*) McNellis told Plaintiff that he just needed to talk to Plaintiff in private, and Plaintiff said he was not comfortable with stepping outside to talk in private. (*Id.*) One of the detectives then began to search the apartment. (*Id.* ¶ 22.) As the detective walked back to the bedroom area, Plaintiff's mother yelled that she never gave him permission to search, after which the detective returned to the front of the apartment. (*Id.*) The remaining NYPD Defendants then walked into the apartment. (*Id.* ¶ 23.)

Plaintiff became nervous and sat on the couch next to his friend. (*Id.*) McNellis again

asked Plaintiff to step outside and assured Plaintiff that he was not in trouble.  (*Id.*)  Plaintiff refused to step outside, and McNellis responded that "we can do this hard way or the easy way." (*Id.*)  Plaintiff interpreted that as a threat and said "ok," but he needed to use the bathroom first. (*Id.* ¶ 24.)  McNellis said that was fine.  (*Id.*)  While Plaintiff was in the bathroom, McNellis entered the bathroom, grabbed Plaintiff by the arm, told him he could use the bathroom when they get to where they are going, and pulled him out of the bathroom.  (*Id.*)  Once McNellis and Plaintiff entered the hallway outside of the apartment, Garrity placed Plaintiff under arrest.  (*Id.* ¶ 25.)  Garrity searched Plaintiff and discovered narcotics on his person, which Garrity placed in his pocket.  (*Id.*)

McNellis and Garrity then drove Plaintiff to the Manhattan Robbery Squad of the NYPD. (*Id.* ¶ 26.)  At approximately 8:00 p.m., McNellis and Garrity took Plaintiff to a secured interview room, where Plaintiff was handcuffed to a pole, read his *Miranda* rights, and questioned for the next five to six hours by McNellis and Garrity about his cell phone and how he obtained it.  (*Id.*)  Plaintiff asked what had happened, and McNellis informed him that there was a home invasion and robbery during which someone was shot, and that Plaintiff's cell phone was one of the items taken from the home.  (*Id.* ¶ 27.)  Plaintiff told McNellis that he did not know the cell phone was stolen and that he had nothing to do with the crime.  (*Id.* ¶ 28.)  He stated his willingness to give fingerprints, DNA, and/or participate in a line up.  (*Id.*)  McNellis asked Plaintiff how he obtained the cell phone, and Plaintiff told him how he got the cell phone. (*Id.*)

While Garrity was questioning Plaintiff, McNellis left the room on several occasions to talk to someone on the phone.  (*Id.* ¶ 29.)  After a few calls, McNellis informed Plaintiff that "the D.A. does not want to press any charges."  (*Id.*)  McNellis stated that Plaintiff was not the person

they were looking for and that they would take Plaintiff back to his mother's apartment in White Plains.  (*Id.*)  After McNellis spoke to someone on the phone again, he informed Plaintiff that the White Plains Police wanted to speak to Plaintiff.  (*Id.* ¶ 31.)  Plaintiff alleges upon information and belief that the person McNellis spoke to was Lieutenant Doherty of the White Plains Police Department.  (*Id.*)  McNellis told Plaintiff that he did not know what the White Plains Police wanted to speak to Plaintiff about, but that he was going to take Plaintiff to the White Plains Police Department.  (*Id.* ¶ 32.)  Plaintiff stated he did not want to go.  (*Id.*)  After McNellis contacted White Plains to ask if they could meet Plaintiff at his house, McNellis told Plaintiff that they had to go to the police department.  (*Id.* ¶¶ 32–33.)  Plaintiff asked again if he was under arrest, and McNellis responded that he was not.  (*Id.* ¶ 33.)  Plaintiff then told McNellis that he did not want to talk to the White Plains police and that he would find his own way home.  (*Id.*).

After McNellis told Plaintiff that Plaintiff did not have a choice, he and Garrity placed Plaintiff in handcuffs and ankle shackles and took Plaintiff to the White Plains Police Department.  (*Id.* ¶¶ 33–34.)  When they arrived, Defendants Tallevi and Cunningham took a sworn statement from McNellis, and took Plaintiff's cell phone.  (*Id.* ¶ 34.)  Tallevi, Cunningham, and other White Plains police officers then took pictures and data out of Plaintiff's cell phone without his consent.  (*Id.*)

Tallevi and Cunningham then commenced and processed Plaintiff's arrest, charging him with criminal possession of a controlled substance in the fifth degree and criminal possession of stolen property in the fifth degree—the same charges that the Manhattan District Attorney refused to bring against Plaintiff.  (*Id.* ¶ 35.)  On November 18, 2013—after Plaintiff was confined for six months—all charges were dismissed.  (*Id.*)

## II.    **Procedural History**

Plaintiff filed his initial Complaint on January 25, 2016 against Defendants McNellis, Garrity, and the NYPD.  (Doc. 2.)  On February 24, 2016, I entered an order replacing the NYPD with the City of New York as a defendant, since an agency of the City of New York is not an entity that can be sued.  (Doc. 7.)  I also entered an order of service with respect to the City of New York, McNellis, and Garrity.  (*Id.*)

On August 12, 2016, I entered an order granting Plaintiff's request to amend the Complaint to add certain defendants and to include further details in his allegations.  (Doc. 22.) Plaintiff filed his amended complaint on September 30, 2016, ("First Amended Complaint"), adding the City of White Plains, Nieves, McCready, Tallevi, Cunningham, McLoughlin, and two John Doe NYPD Technical Assistance Response Unit ("T.A.R.U.") officers as Defendants. (Doc. 25.)

Defendant City of White Plains filed a motion to dismiss the First Amended Complaint on February 22, 2017.  (Docs. 46–50.)  Because my Individual Rules at the time required parties to attend a pre-motion conference prior to filing dispositive motions, I held the motion to dismiss in abeyance until the parties appeared for a pre-motion conference.  (*See* Doc. 51.)  Before the pre-motion conference, Defendants McCready, Nieves, and McLaughlin requested pre-motion conferences in anticipation of filing their own motion to dismiss.  (Docs. 52, 60.)  After the conference, I entered an order setting a briefing schedule for the motions to dismiss.  (Doc. 62.) On May 15, 2017, Defendants McCready, Nieves, and McLoughlin filed their motion to dismiss and supporting materials.  (Docs. 68–70.)

On June 9, 2017, Plaintiff requested to amend the First Amended Complaint to add certain allegations against the Defendants.  (Doc. 71.)  After Plaintiff submitted his Second

Amended Complaint for my review on August 9, 2017, (Doc. 86), I accepted the Second Amended Complaint, denied as moot the Defendants' motions to dismiss without prejudice, and granted leave to re-file, (Doc. 89). Defendants City of New York, McNellis, and Garrity filed an Answer to the Second Amended Complaint on August 23, 217. (Doc. 94.)

On September 7, 2017, the WP Defendants filed their motion to dismiss the Second Amended Complaint and supporting materials. (Docs. 96–100.) The Moving NYC Defendants filed their motion to dismiss the Second Amended Complaint and supporting materials on September 8, 2017. (Docs. 101–03.) Plaintiff filed his opposition on December 5, 2017. (Doc. 109.) The WP Defendants filed their reply on December 7, 2017, (Doc. 110), and the Moving NYC Defendants filed their reply on December 19, 2017, (Doc. 112).

### III.    Legal Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*

*v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  A complaint need not make

"detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a

formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (internal

quotation marks omitted).  Finally, although all allegations contained in the complaint are

assumed to be true, this tenet is "inapplicable to legal conclusions."  *Id.*  A complaint is "deemed

to include any written instrument attached to it as an exhibit or any statements or documents

incorporated in it by reference."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.

2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.

1995)).

Even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed and a

*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than

formal pleadings drafted by lawyers."  *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008)

(quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  Further, pleadings of a pro se party should

be read "to raise the strongest arguments that they suggest."  *Brownell v. Krom*, 446 F.3d 305,

310 (2d Cir. 2006) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)).

Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a

plausible claim supported by more than conclusory factual allegations.  *See Walker v. Schult*, 717

F.3d 119, 124 (2d Cir. 2013).  In other words, "the duty to liberally construe a plaintiff's

complaint is not the equivalent of a duty to re-write it."  *Geldzahler v. N.Y. Med. Coll.*, 663 F.

Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted).

IV.    **Discussion**

A.    ***Statute of Limitations***

The WP Defendants and Moving NYC Defendants move to dismiss the claims in the Second Amended Complaint against them because they are barred by the statute of limitations.

**1.  Applicable Law**

Since § 1983 does not provide a specific statute of limitations, "courts apply the statute of limitations for personal injury actions under state law." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013).  "Section 1983 actions filed in New York are therefore subject to a three-year statute of limitations." *Id.*; *see also* N.Y. C.P.L.R. § 214.  The accrual date for a § 1983 action, however, is "a question of federal law that is not resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  Instead, it is governed by "federal rules conforming in general to common-law tort principles." *Id.*  Under those principles, "the standard rule [is] that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (citations and internal quotation marks omitted).

a.  Relation Back Under Rule 15(c)(1)(C)

Even if the statute of limitations has expired as to claims against a defendant, a court may entertain those claims if they "relate back" to the original pleading or if equitable tolling applies. Federal Rule of Civil Procedure 15(c)(1)(C) "provides the federal standard for relation back." *Hogan*, 738 F.3d at 517.  For a claim against a defendant to relate back under Rule 15(c)(1)(C), the following requirements must be met:

> (1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party should have known that, but for a mistake of identity, the original action would have been brought against it; and . . . [4] the second and third criteria are fulfilled within 120 days of the filing of the original complaint, and . . . the original complaint [was] filed within the limitations

period.

*Id.* (alteration in original) (quoting *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 468–69

(2d Cir. 1995)).

However, the "failure to identify individual defendants when the plaintiff knows that

such defendants must be named cannot be characterized as a mistake." *Id.* at 518 (quoting

*Barrow*, 66 F.3d at 470). Therefore, where a plaintiff fails to amend and identify John Doe

defendants in a § 1983 action within the statute of limitations period because the plaintiff is

unaware of the defendants' identities, any amended complaint naming those individuals after the

expiration of the statute of limitations cannot be said to relate back under Rule 15(c)(1)(C). *See*

*Hogan*, 738 F.3d at 518 ("This Court's interpretation of Rule 15(c)(1)(C) makes clear that lack

of knowledge of a John Doe defendant's name does not constitute a mistake of identity."

(internal quotation marks omitted)).

### b. Relation Back Under Rule 15(c)(1)(A)

In addition to relation back under Rule 15(c)(1)(C), "Rule 15(c)(1)(A) permits an

amended pleading to relate back when 'the law that provides the applicable statute of limitations

allows relation back.'" *Id.* at 518 (internal quotation marks omitted). In other words, an

amended complaint "relates back if New York law, which provides the applicable statute of

limitations [for § 1983 claims in New York], authorizes relation back." *Vasconcellos v. City of

New York*, No. 12 Civ. 8445(CM), 2014 WL 4961441, at *7 (S.D.N.Y. Oct. 2, 2014). Under

New York law, a party seeking relation back for a previously unknown defendant may utilize

New York Civil Practice Law and Rules ("C.P.L.R.") § 203 (New York's general relation back

statute) or C.P.L.R. § 1024 (New York's John Doe procedural rule). *See Strada v. City of New

York*, No. 11-CV-5735 (MKB), 2014 WL 3490306, at *6–8 (E.D.N.Y. July 11, 2014).

Section 203 of the C.P.L.R. provides that claims against a new defendant relate back to timely-filed pleadings when:

> (1) the new claim arose out of the same conduct, transaction or occurrence as the original allegations; (2) the new party is united in interest with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and (3) the new party knew or should have known that, but for a mistake as to the identity of the proper parties, the action would have been brought against him as well.

*Id.* (citation omitted). "New York courts have held, however, that a plaintiff may not add a new defendant under [C.P.L.R. § 203] unless 'the new party knew or should have known that, but for an *excusable mistake* by plaintiff as to the identity of the proper parties, the action would have been brought against him as well.'" *Vasconcellos*, 2014 WL 4961441, at *8 (quoting *Malament v. Vasap Constr. Corp.*, 728 N.Y.S.2d 381, 381 (2d Dep't 2001) and collecting cases). "This requirement closely tracks the federal relation-back requirement of Rule 15(c)(1)(C)." *Id.*

Section 1024 of the C.P.L.R. provides:

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

N.Y. C.P.L.R. § 1024. "New York courts have interpreted this section to permit John Doe substitutions *nunc pro tunc*." *Hogan*, 738 F.3d at 518–19 (collecting cases). A plaintiff must meet two initial requirements: "First, the party must 'exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name.'" *Id.* at 519 (quoting *Bumpus v. N.Y.C. Transit Auth.*, 883 N.Y.S.2d 99, 104 (2d Dep't 2009)). "Second, the party must describe the John Doe party 'in such form as will fairly apprise the party that he is the intended defendant.'" *Id.* (quoting *Bumpus*, 883 N.Y.S.2d at 104). To satisfy the due diligence

requirement, the plaintiff must "show that he or she made timely efforts to identify the correct party before the statute of limitations expired," such as "serving discovery demands on any known parties or seeking disclosures pursuant to a Freedom of Information Law ('FOIL') request." *Cotto v. City of New York*, Nos. 15 Civ. 9123 (RWS), 16 Civ. 226 (RWS), 2017 WL 3476045, at *5 (S.D.N.Y. Aug. 11, 2017) (internal quotation marks omitted).

## 2. Application

Plaintiff did not name the WP Defendants or the Moving NYC Defendants in his original Complaint. (Compl.)[4] The first time he named the WP Defendants and Defendants Nieves, McCready, and McLoughlin was in the First Amended Complaint, filed on September 30, 2016. (FAC.)[5] Plaintiff did not name Defendants Gentz and Tierney until he filed the Second Amended Complaint on August 9, 2017. (*See generally* SAC.)

As an initial matter, Plaintiff's malicious prosecution claims against the Defendants named in the First Amended Complaint are timely. A cause of action for malicious prosecution accrues "when the underlying criminal action is conclusively terminated." *Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995). Plaintiff's malicious prosecution claims did not accrue until November 18, 2013, when all charges against him were dismissed, (SAC ¶ 35), and the statute of limitations therefore expired on November 18, 2016. Since the First Amended Complaint was filed on September 30, 2016, Plaintiff's malicious prosecution claims against the WP Defendants and Defendants Nieves, McCready, and McLoughlin were filed less than three years after his malicious prosecution claims accrued. (FAC 3.) The Second Amended Complaint alleges the same claims. (SAC ¶¶ 36–46.) Therefore, Plaintiff's malicious prosecution claims are timely as

---

[4] "Compl." refers to the Complaint. (Doc. 2.)

[5] "FAC" refers to the First Amended Complaint. (Doc. 25.)

to the WP Defendants and Defendants Nieves, McCready, and McLoughlin.

However, Plaintiff's malicious prosecution claims against the Defendants named for the first time in the Second Amended Complaint—Gentz and Tierney—were filed after the expiration of the statute of limitations. For those claims to be timely, Plaintiff's claims must relate back to the First Amended Complaint.

Similarly, Plaintiff's remaining claims against the WP Defendants and the Moving City Defendants were filed after the expiration of the relevant statute of limitations. With the exception of Plaintiff's malicious prosecution claims, all of Plaintiff's other claims accrued on April 24, 2013, the date of his arrest, and the statute of limitations for those claims expired on April 24, 2016, approximately five months before Plaintiff filed the First Amended Complaint and over a year before Plaintiff filed the Second Amended Complaint. Those claims, therefore, must relate back to the Complaint, since that was the last pleading in which those claims were timely filed.

The WP Defendants and the Moving NYC Defendants argue that Plaintiff's claims do not relate back under either the federal or state relation-back standards. Plaintiff's opposition contends that his claims relate back under both standards as to the WP Defendants; however, the opposition does not address the arguments made by the Moving NYC Defendants. (*See generally* Pl.'s Opp.)[6] Therefore, with the exception of the malicious prosecution claims against Defendants Nieves, McCready, and McLoughlin, Plaintiff's claims against the Moving NYC Defendants are dismissed as untimely. *See AT&T Corp. v. Syniverse Techs., Inc.*, No. 12 Civ. 1812(NRB), 2014 WL 4412392, at *7 (S.D.N.Y. Sept. 8, 2014) (concluding that plaintiff's

---

[6] "Pl.'s Opp." refers to the Memorandum of Law Submitted on behalf of the Plaintiff Daniel Forte Pro Se in Support of Opposition to Motion to Dismiss, filed December 5, 2017. (Doc. 109.)

"silence [in its opposition] concedes the point"). Next, I analyze Plaintiff's relation back arguments under Rule 15(c)(1)(C).

As described above with regard to relation back under Rule 15(c)(1)(C), there are four requirements a plaintiff must meet in order to establish that his untimely claims relate back to a timely Complaint. *See Hogan*, 738 F.3d at 517 (quoting *Barrow*, 66 F.3d at 468–69).

With respect to the first requirement, Plaintiff's claims against the WP Defendants in the Second Amended Complaint arose out of conduct, transactions, and occurrences that were alleged in the original Complaint. The Second Amended Complaint alleges that McNellis transported Plaintiff against his will to the White Plains Police Department, (SAC ¶¶ 33–34), where Tallevi and Cunningham processed him on charges that the Manhattan District Attorney chose not to pursue, (*id.* ¶ 35). After being incarcerated for six months, the charges against Plaintiff were dismissed. (*Id.*) The original Complaint alleges essentially identical facts. It alleges that after McNellis talked to someone on the phone, he informed Plaintiff that the White Plains police wanted to speak with Plaintiff. (Compl. 9.) McNellis then transported Plaintiff against his consent to the White Plains Police Department, where White Plains police officers arrested Plaintiff on charges the NYPD refused to bring. (*Id.*) The charges against Plaintiff were dismissed six months later. (*Id.*) There is no question that the allegations in the Second Amended Complaint relate to the same conduct, transactions, and occurrences alleged in the Complaint. The fact that the Complaint does not specifically name the WP Defendants or bring claims against them does not mean that Plaintiff cannot meet the first requirement. *See In re Mission Const. Litig.*, No. 10 CIV. 4262 LTS HBP, 2013 WL 4710377, at *6 (S.D.N.Y. Aug. 30, 2013) (permitting relation-back of claims against a newly added party where the claims arose from the same transaction alleged in the original complaint).

Second, Plaintiff has adequately established, at this stage, that the WP Defendants received notice of the action such that they would not be prejudiced in maintaining a defense. Plaintiff contends that the WP Defendants received notice in March 2016, when counsel for the NYC Defendants contacted the City of White Plains informing it of Plaintiff's action, that the action was related to Plaintiff's criminal case in White Plains, and that he required access to certain records associated with Plaintiff's criminal case. (Pl.'s Opp. 3–4.) Upon learning that he needed Plaintiff's consent to access those records, counsel for the NYC Defendants requested Plaintiff's consent on April 1, 2016, (*id.* Ex. H), which he granted on April 18, 2016, (*id.* at 3–4). WP Defendants do not contest that this occurred, but rather argue that the notion that a request for records could provide notice to the WP Defendants is "specious." (WP Defs.' Reply 5.)[7] Courts have held that notice may be sufficient "where a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means." *In re Integrated Res. Real Estate Ltd. Partnerships Sec. Litig.*, 815 F. Supp. 620, 647 (S.D.N.Y. 1993) (internal quotation marks omitted). Given that the WP Defendants effectively failed to address in substance Plaintiff's argument that they received notice through counsel's request for records, I decline to dismiss Plaintiff's claims at this stage of the litigation.

Plaintiff has also met the third requirement of the federal relation-back standard. The WP Defendants contend that relation back is not permitted where the Plaintiff failed to timely name defendants because he was unaware of their identities. (WP Defs.' Mem. 4.)[8] Although this is a correct statement of the law, *see Barrow*, 66 F.3d at 470, Plaintiff does not contend that he was unaware of the WP Defendants' identities when he filed the Complaint. Instead, Plaintiff

---

[7] "WP Defs.' Reply" refers to the Reply Memorandum of Law of the WP Defendants. (Doc. 110.)

[8] "WP Defs.' Mem." refers to the Memorandum of Law of the WP Defendants. (Doc. 99.)

contends that "he was not aware of the liability in the role [the WP Defendants] played." (Pl.'s Opp. 5.) As the Supreme Court has explained, the federal relation-back standard is concerned not with the plaintiff's knowledge, but rather, "whether [the defendant] knew or should have known that it would have been named as a defendant but for an error." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010). The Supreme Court further explained that:

> Information in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity. For purposes of that inquiry, it would be error to conflate knowledge of a party's existence with the absence of mistake. . . . That a plaintiff knows of a party's existence does not preclude her from making a mistake with respect to that party's identity. A plaintiff may know that a prospective defendant—call him party A—exists, while erroneously believing him to have the status of party B. Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the conduct, transaction, or occurrence giving rise to her claim.

*Id.* at 548–49 (internal quotation marks omitted). The Court noted, however, that "making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity." *Id.* at 549.

Plaintiff contends that even though he knew the identities of the WP Defendants, he only discovered, after receiving legal assistance and reviewing full transcripts and records, that the WP Defendants may be legally liable for their conduct. (Pl.'s Opp. 5.) In other words, he claims that he did not include the WP Defendants in the original Complaint because he misunderstood the legal significance of the role they played in the conduct, transactions, and occurrences that gave rise to his claims. Plaintiff's initial request to amend the Complaint states that, after conducting legal research, he concluded that he needed to amend the Complaint to "expound on what factually occurred and all who is responsible for the wrong(s) alluded to in [his] initial Complaint." (Doc. 20.) This supports Plaintiff's contention that although he was aware of the

identities of the WP Defendants, he was mistaken as to their role in the misconduct and the resulting liability they faced. Courts have found that the third requirement of the federal relation-back standard is met in analogous circumstances. *See, e.g.*, *In re Mission Const. Litig.*, No. 10 Civ. 4262(LTS)(HBP), 2013 WL 4710377, at *8 (S.D.N.Y. Aug. 30, 2013) (permitting relation back where plaintiff "was not aware of [the newly added defendant's] role and potential liability until discovery began" and citing similar cases); *Trustees of Nat. Ret. Fund v. Wildwood Corp.*, No. 11-CV-06287 NSR LMS, 2014 WL 1918080, at *3 (S.D.N.Y. May 12, 2014) (permitting relation back where plaintiff misunderstood "the role that [the newly added defendants] played in the conduct giving rise to the 'evade or avoid' claim"); *see also Abdell v. City of New York*, 759 F. Supp. 2d 450, 457 (S.D.N.Y. 2010) ("After *Krupski*, it is clear that a mistake 'concerning the proper party's identity' under Rule 15(c) includes a lack of knowledge regarding the conduct or liability of that party."). Here, given that Plaintiff omitted the WP Defendants from the original Complaint—despite bringing claims against other law enforcement defendants based on allegations regarding their conduct with respect to Plaintiff's arrest and prosecution—the WP Defendants knew or should have known that it was not a deliberate choice by Plaintiff not to name them, but rather the result of a mistake or misunderstanding with respect to their role and associated liability. *See Abdell*, 759 F. Supp. 2d at 457 (holding that, where the newly added defendant was not named in an initial complaint, but another officer who participated in the same arrest decision was named, "[t]he most logical explanation for [plaintiffs'] failure to name [the newly added defendant] in the original Complaint is that [p]laintiffs misunderstood his role in the arrest decision giving rise to their claim").

Finally, Plaintiff has established, for purposes of this motion, that the second and third prongs were fulfilled within 120 days of filing the Complaint, which was filed within the

limitations period.  Plaintiff filed the Complaint on January 25, 2016, which was within the

three-year limitations period for Plaintiff's claims.  (*See* Compl.)  The WP Defendants received

notice of Plaintiff's action less than 120 days later in March 2016, when counsel for the NYC

Defendants contacted the City of White Plains informing it of Plaintiff's action.  Therefore, the

fourth prong of the federal relation-back standard is fulfilled.  Plaintiff's claims against the WP

Defendants thus relate back to the Complaint and are timely.

### B.  *Claims Against the WP Defendants*

#### 1.  Municipal Liability

A municipality or local government is liable under § 1983 "if the governmental body

itself subjects a person to a deprivation of rights or causes a person to be subjected to such

deprivation."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal quotation marks omitted).

Local governments are not vicariously liable under Section 1983, and instead are responsible

only for their own illegal acts.  *Id.*  "A municipality may, however, be liable under § 1983 when

the alleged deprivation of constitutional rights is the result of action pursuant to an official

municipal policy, or the municipality exhibits deliberate indifference to the possibility of such a

constitutional violation."  *Williams v. City of New York*, 690 F. Supp. 2d 338, 343 (S.D.N.Y.

2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *Vann v. City of New

York*, 72 F.3d 1040, 1049 (2d Cir. 1995)).  In addition, "the deprivation of the plaintiff's rights

[must be] caused by a governmental custom, policy, or usage of the municipality."  *Jones v.

Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012).

A defendant's failure to train or supervise its employees may constitute an official policy

or custom "if the failure amounts to 'deliberate indifference' to the rights of those with whom the

. . . employees interact."  *Wray v. City of New York.*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting

*City of Canton v. Harris,* 489 U.S. 378, 388 (1989)). In such cases, a plaintiff must show that a

policymaking official had notice "of a potentially serious problem of unconstitutional conduct,

such that the need for corrective action or supervision was obvious, and the policymaker's failure

to investigate or rectify the situation evidences deliberate indifference." *Amnesty Am. v. Town of*

*W. Hartford*, 361 F.3d 113, 128 (2d Cir. 2004) (internal citation and quotation marks omitted).

A "policy of inaction in light of notice" that an entity's training or supervision program will

cause constitutional violations "is the functional equivalent of a decision by the [entity] to violate

the Constitution." *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011) (internal quotation marks

omitted).

Courts in this circuit have adopted three requirements a plaintiff must meet to establish

§ 1983 liability for an entity's failure to train or supervise:

> First, the plaintiff must show that a policymaker knows to a moral certainty that her
> employees will confront a given situation . . . . Second, the plaintiff must show that
> the situation either presents the employee with a difficult choice of the sort that
> training or supervision will make less difficult or that there is a history of employees
> mishandling the situation . . . . Finally, the plaintiff must show that the wrong choice
> by the city employee will frequently cause the deprivation of a citizen's
> constitutional rights.

*Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992) (internal quotation marks

omitted). A plaintiff who has established all three elements has established "the circumstances

under which a supervisor's failure to act triggers liability under § 1983." *Reynolds v. Giuliani*,

506 F.3d 183, 192 (2d Cir. 2007).

The Supreme Court has made clear that "deliberate indifference is a stringent standard of

fault, requiring proof that a[n entity] disregarded a known or obvious consequence of [its]

action." *Connick*, 563 U.S. at 61 (internal quotation marks omitted). An entity's culpability "is

at its most tenuous where a claim turns on a failure to train." *Id.* The "stringent causation and

culpability requirements" in the failure to train context "have been applied to a broad range of supervisory liability claims, including claims for failure to supervise and failure to discipline." *Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *19 (S.D.N.Y. Mar. 26, 2015) (quoting *Reynolds*, 506 F.3d at 192).

The only allegations in the Second Amended Complaint regarding any policy, practice, or custom on behalf of the City of White Plains are that the City has "a history of an undefined custom of failing to train its officers in the correct and legal nature of probable cause, which leads to [u]nlawful [a]rrest [and] malicious prosecution."  (SAC ¶ 44.)  The City has allegedly "permitted, tolerated and been deliberately indifferent to a pattern and practice of staff violating citizens' constitutional rights.  This widespread tolerance of police officers abusing their authority constitutes a municipal policy or custom that led to the deprivation of plaintiff's rights."  (*Id.*; *see also* ¶ 10.)  These allegations are vague and conclusory.  Moreover, there are no specific allegations that Defendants Tallevi and Cunningham were acting pursuant to a policy or custom of the City of White Plains, or that some specific deficiency in the training program of the White Plains Police Department caused Plaintiff's alleged injuries.  Plaintiff's "formulaic recitation of the elements of a cause of action" for municipal liability plainly fails to meet the relevant pleading requirements.  *Iqbal*, 556 U.S. at 678.

Plaintiff attempts to salvage his municipal liability claim against the City of White Plains by listing several cases in his opposition purportedly demonstrating a policy or custom. Notwithstanding the requirement that a court must consider only the sufficiency of a plaintiff's pleadings on a motion to dismiss, and the Second Amended Complaint contains no such allegations, even if Plaintiff had included the list of cases in the Second Amended Complaint, the list does not provide allegations sufficient to plausibly allege a claim for municipal liability.

Specifically, Plaintiff lists five cases that span at least the past twenty years and involve claims of false arrest and malicious prosecution against the City of White Plains. (Pl.'s Opp. 13–15.) Two of the cases involve denials of summary judgment.[9] (*Id.* at 13 (citing *Sassower v. City of White Plains*, 992 F. Supp. 652 (S.D.N.Y. 1998)).) One of the cases involves a claim for attorneys' fees after the City of White Plains settled a plaintiff's § 1983 claims. (*Id.* at 13–14 (citing *Barbour v. City of White Plains*, 788 F. Supp. 2d 216 (S.D.N.Y. 2011), *aff'd*, 700 F.3d 631 (2d Cir. 2012)).) Another case involved the Second Circuit's reversal of a district court's grant of summary judgment to White Plains police officer defendants, finding those defendants liable for false arrest and malicious prosecution, but affirming the district court's grant of summary judgment to the City of White Plains on the plaintiff's *Monell* claim. (Pl.'s Opp. 14–15 (citing *Ackerson v. City of White Plains*, 702 F.3d 15 (2d Cir. 2012), *as amended* (Dec. 4, 2012)).) The final case involves a motion to dismiss the plaintiff's § 1983 claims against White Plains police officers and the City of White Plains, which the court converted into a motion for summary judgment and provided the plaintiff additional time to respond. (Pl.'s Opp. 15 (citing *Gomez v. City of White Plains*, No. 13-cv-7750 (NSR), 2014 WL 2210646, at *1 (S.D.N.Y. May 23, 2014)).) Only one of these cases involved an adjudication of liability against a White Plains police officer. *See Ackerson*, 702 F.3d at 22. The remaining cases either settled, without any reference to whether there was an admission of liability by the defendants, or evidence the non-dispositive resolution to a motion. This is not enough to plausibly allege a widespread and persistent practice sufficient to infer a policy or custom for *Monell* liability. *See Walker v. City of New York*, No. 14-CV-808 (ER), 2015 WL 4254026, at *9 (S.D.N.Y. July 14, 2015) (finding

_____

[9] Plaintiff incorrectly cites several cases. I was able to locate each of them except for the case listed as "Livingston v. City of White Plains, 2011 WL 7010234 at 5 (2011)." (Pl.'s Opp. 13.) For that case, I accept as true Plaintiff's representation of its outcome.

that allegations of thirty-six lawsuits involving allegedly false arrests, none of which resulted in an adjudication or finding of liability, over the span thirteen years, were "insufficient to plausibly support an inference of a widespread custom"); *Tieman*, 2015 WL 1379652, at *17 (finding that "allegations of thirteen instances of excessive force during arrests over four years (none of which involved findings or admissions of culpability) . . . do[] not plausibly demonstrate that the use of excessive force during arrest was so frequent and pervasive to constitute a custom"); *Walker v. City of New York*, No. 12 Civ. 5902(PAC), 2014 WL 1259618, at *3 (S.D.N.Y. Mar. 18, 2014) (finding that plaintiff's reliance on ten complaints, "none resulting in an adjudication of liability," over the span of a decade, "hardly suggests the frequency or pervasiveness of the purported custom that is required to state a *Monell* claim").  Therefore, Plaintiff's municipal liability claims against Defendant City of White Plains are dismissed.[10]

## 2.  § 1983 Conspiracy[11]

To establish a claim for conspiracy to violate § 1983, a plaintiff must show:  "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  "It is well settled that claims of conspiracy containing only conclusory, vague, or general allegations of

---

[10] Similarly, Plaintiff's claims against Defendants Tallevi and Cunningham in their official capacities are dismissed, as "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell*, 436 U.S. at 690 n.55).

[11] Plaintiff styles his claim as a § 1983 conspiracy, but I note that the Second Circuit has, on occasion, construed such claims as brought under § 1985.  *See Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003).  Nevertheless, because the Second Circuit has also recognized conspiracy claims under § 1983, *see Corsini v. Brodsky*, 731 F. App'x 15, 19 (2d Cir. 2018) (summary order) (citing *Cimabriello v. Cty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002))), and because Plaintiff styles his claim as a § 1983 conspiracy claim, I construe the claim as brought under § 1983.

conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (quoting *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1992)). The plaintiff must allege such facts to support the conclusion that a meeting of the minds to achieve some unlawful end occurred. *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003).

The WP Defendants argue that Plaintiff has alleged only in a conclusory fashion that Tallevi and Cunningham entered into a conspiracy with McNellis to falsely arrest Plaintiff and initiate a malicious prosecution against him. (WP Defs.' Mem. 6.) Plaintiff alleges that McNellis engaged in several phone calls while Plaintiff was being interrogated. (SAC ¶ 29.) Plaintiff alleges upon information and belief that the last phone call McNellis had was with a Lieutenant Doherty at the White Plains Police Department, after which McNellis told Plaintiff that the White Plains police wanted to speak with him. (SAC ¶ 31.) The WP Defendants argue that because Plaintiff does not allege the content of these calls, and because he believes the final phone call was with Doherty, this establishes that McNellis did not enter into a conspiracy with Tallevi or Cunningham. (WP Defs.' Mem. 6.) However, it is unsurprising that Plaintiff does not allege the content of the calls, as they occurred outside the interrogation room. (*See* SAC ¶ 29.) It is a plausible inference that at least one of the calls was with Tallevi or Cunningham and involved an agreement, express or tacit, to bring Plaintiff to White Plains to arrest him. Absent discovery, it would be impossible for Plaintiff to allege the content of calls that occurred outside of earshot. Taking into account the allegations that McNellis gave a sworn statement to Tallevi and Cunningham and handed Plaintiff's cell phone to them upon arrival at the White Plains Police Department, there is a plausible inference that McNellis agreed with Tallevi, expressly or tacitly, to violate Plaintiff's constitutional rights.

The WP Defendants further argue that Plaintiff fails to allege an overt act done in furtherance of the conspiracy. (WP Defs.' Mem. 6–7.) However, the Second Amended Complaint alleges that Tallevi and Cunningham took a sworn statement from McNellis, took Plaintiff's phone from McNellis, took pictures and data out of Plaintiff's phone without his consent, and commenced and processed Plaintiff's arrest. (SAC ¶¶ 34–35.) This conduct clearly involves acts that qualify as overt acts done in furtherance of the alleged conspiracy. Plaintiff adequately alleges a § 1983 conspiracy.

### 3. False Arrest and Malicious Prosecution

The WP Defendants argue that Tallevi and Cunningham are not liable for false arrest or malicious prosecution because they are entitled to qualified immunity. (WP Defs.' Mem. 10–14.) The existence of probable cause is a complete defense to claims for false arrest and malicious prosecution. *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "Probable cause exists when an officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Savino*, 331 F.3d at 76 (internal quotation marks omitted). "Probable cause may also exist where the officer has relied on mistaken information, so long as it was reasonable for him to rely on it." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010). However, where a reasonable person would make further inquiry, the failure to do so "may be evidence of lack of probable cause." *Id.* Furthermore, "a police officer's fabrication and forwarding to prosecutors of known false evidence" negates a finding of probable cause. *Id.* at 162.

The doctrine of qualified immunity protects a police officer from liability if: "(1) his conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001) (internal citation and quotation marks omitted). A police officer is entitled to qualified immunity if he possessed "arguable probable cause" to arrest and/or prosecute a plaintiff. *Id.* at 202. "Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law." *Id.* at 202–03 (internal quotation marks omitted).

A defendant who raises the defense of qualified immunity on a motion to dismiss "must demonstrate that facts establishing arguable probable cause are clear from the face of the [complaint]." *Lumpkin v. Brehm*, 230 F. Supp. 3d 178, 184 (S.D.N.Y. 2017) (internal quotation marks omitted). The Second Circuit has held that a defendant asserting such a defense "faces a formidable hurdle." *McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004). "[T]he plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.* at 436.

The WP Defendants argue that Tallevi and Cunningham are entitled to qualified immunity because they had at least arguable probable cause to arrest Plaintiff and initiate a prosecution against him. I agree that Tallevi and Cunningham had at least arguable probable cause to arrest Plaintiff, but I do not agree that they had arguable probable cause to initiate a prosecution against him as to the charge for criminal possession of stolen property.[12]

---

[12] Plaintiff was charged for criminal possession of a controlled substance in the fifth degree, (SAC ¶ 35), based upon the erroneous finding that more than 500 milligrams of cocaine was found on Plaintiff's person, (*see* Doc. 97-4; Doc. 97-5). It appears that the appropriate charge should have been criminal possession of a controlled substance in the seventh degree, *see* N.Y. Penal Law § 220.03, because Plaintiff had less than 500 milligrams of cocaine, (*see* Doc. 97-5). Criminal possession of a controlled substance in the fifth degree is a felony, N.Y. Penal Law § 220.06,

With respect to Plaintiff's false arrest claim, Plaintiff alleges in the Second Amended Complaint that Garrity placed Plaintiff under arrest, searched him in the hallway outside his mother's apartment, and found narcotics "on his person." (SAC ¶ 25.) Plaintiff does not dispute that he was found in possession of narcotics at the time of his arrest. (*Id.*) Plaintiff does not allege that McNellis or Garrity provided any false information to Tallevi or Cunningham with regard to the narcotics recovered from Plaintiff. Plaintiff also does not allege that Tallevi or Cunningham arrested him without knowledge that he had narcotics on his person. Although Plaintiff contends that the search that led to the discovery of the narcotics by McNellis and Garrity was improper, that does not undermine the probable cause on which Tallevi and Cunningham effectuated the arrest of Plaintiff at the White Plains Police Department. Because the probable cause inquiry in the context of a false arrest claim focuses on "whether probable cause existed to arrest a defendant, and . . . not . . . whether probable cause existed with respect to each individual charge," *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006), Plaintiff's false arrest claims against Tallevi and Cunningham are dismissed.

However, "a finding of probable cause to arrest as to one charge does not necessarily defeat a claim of malicious prosecution as to other criminal charges that were resolved in the plaintiff's favor." *D'Angelo v. Kirschner*, 288 F. App'x 724, 726-27 (2d Cir. 2008) (summary order). Here, Plaintiff argues that Tallevi and Cunningham lacked probable cause to prosecute him on the charge of criminal possession of stolen property in the fifth degree. To prove criminal possession of stolen property in the fifth degree, the government must show that the

_____

while criminal possession of a controlled substance in the seventh degree is a misdemeanor, *id.* § 220.03. I do not address, at this stage, Plaintiff's malicious prosecution claim as to the charge for criminal possession of a controlled substance in the fifth degree because neither party has provided case law indicating whether a malicious prosecution claim can survive where probable cause may exist as to a charge for the crime in one degree, but not for the crime in a higher degree, and the plaintiff was charged for the crime in the higher degree.

individual "knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof." N.Y. Penal Law § 165.40. Plaintiff argues that Tallevi and Cunningham lacked probable cause as to whether Plaintiff "knowingly possesse[d] stolen property" and as to whether he "inten[ded] to benefit himself or a person other than [the] owner" of the cell phone.

The WP Defendants argue that Tallevi and Cunningham relied on the sworn statement of McNellis as their basis for probable cause, and that they were entitled to do so pursuant to the "fellow officer rule."[13] That rule provides that "[t]he existence of probable cause need not be assessed on the basis of the knowledge of a single officer." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007). Rather, an officer is entitled to reasonably rely on information received from other officers as the basis for a probable cause determination. *See Hines v. City of Yonkers*, No. 08 Civ. 3126(CM), 2011 WL 3055369, at *6 (S.D.N.Y. July 20, 2011) (dismissing malicious prosecution claim because officer "was entitled to rely on the information he received from the other officers"). The WP Defendants contend that Tallevi's and Cunningham's reliance on McNellis's sworn statement entitles them to the protection of qualified immunity.

As an initial matter, McNellis's sworn statement says nothing about whether or not Plaintiff knew the cell phone was stolen. The sworn statement states that: (1) a cell phone was stolen from an apartment; (2) the service provider responded to a subpoena with information that the cell phone had been reactivated with a number registered to a Michael W. Williams; (3) NYPD computer checks revealed that the number came back to Plaintiff; (4) the NYPD T.A.R.U. was able to use cell towers to determine the location of the cell phone, which matched

---

[13] The fellow officer rule is also sometimes referred to as the "collective knowledge doctrine."

an address listed on Plaintiff's driver's license; and (5) NYPD officers arrested Plaintiff at that address while he possessed the phone. (Pl.'s Opp. Ex. C).[14] None of this information indicates that Plaintiff knew that the cell phone was stolen, nor does it demonstrate that Plaintiff intended to benefit himself or someone other than the owner of the cell phone. The WP Defendants do not cite any cases where the facts similar to those alleged in McNellis's sworn statement was found to be sufficient to establish probable cause.

Moreover, the sworn statement omits information McNellis knew that undermines an inference that Plaintiff knew the cell phone was stolen. As alleged in the Second Amended Complaint, before they took Plaintiff to the White Plains Police Department, McNellis and Garrity interrogated him for five to six hours about the cell phone and how he obtained it. (SAC ¶ 26.) Plaintiff asked the officers what had happened, and they informed him that the cell phone was one of the items stolen during a home invasion, suggesting that Plaintiff did not know that the cell phone was stolen. (*Id.* ¶ 27.) Plaintiff further informed McNellis that he had nothing to do with the crime and did not know the cell phone was stolen. (*Id.* ¶ 28.) Plaintiff also offered to provide fingerprints, DNA, and/or participate in a line up. (*Id.*) Finally, Plaintiff told the officers how he obtained the cell phone and provided a written statement indicating where he bought it, from whom he bought it, the type of car that person drove, and the name of a witness who accompanied Plaintiff when he bought the cell phone. (*Id.*; Pl.'s Opp. Ex. B-2.)[15] McNellis also told Plaintiff that "the D.A. does not want to press any charges," and then McNellis stated that "Plaintiff was not the person who [McNellis] believed he was looking for." (SAC ¶ 29.) In

---

[14] Although Plaintiff attaches McNellis's sworn statement to his opposition, I find that it was incorporated by reference into the Second Amended Complaint based on the allegation that McNellis provided a sworn statement to Tallevi and Cunningham. (SAC ¶ 34.) *See Chambers*, 282 F.3d at 152.

[15] Like McNellis's sworn statement, I find that Plaintiff's written statement was incorporated by reference into the Second Amended Complaint based on the allegation that Plaintiff informed McNellis how he obtained the cell phone. (SAC ¶ 28.) *See Chambers*, 282 F.3d at 152.

other words, McNellis told Plaintiff he was not the person who McNellis believed had stolen the cell phone.

Although Tallevi and Cunningham could argue that McNellis failed to inform them of any of this information, I find that the Second Amended Complaint contains allegations that at least create an inference that they were aware of it. As discussed above, Plaintiff alleges that McNellis engaged in several phone calls while Plaintiff was being interrogated and that the final phone call was with the White Plains Police Department. (SAC ¶¶ 29, 31.) Although Plaintiff does not allege the content of the calls because they occurred outside the interrogation room, (*id.* ¶ 29), it is plausible that McNellis informed Tallevi, Cunningham, or another officer at the White Plains Police Department during one of the phone calls of Plaintiff's statements to McNellis. Without discovery, it would be impossible for Plaintiff to allege the precise content of the phone calls. Assuming the facts in the Second Amended Complaint to be true, drawing all inferences in Plaintiff's favor, liberally construing the allegations in the Second Amended Complaint, *Boykin*, 521 F.3d at 214, and reading the Second Amended Complaint to raise the strongest arguments it suggests, *Brownell*, 446 F.3d at 310, I find that Plaintiff has plausibly alleged a malicious prosecution claim against Tallevi and Cunningham.[16]

---

[16] Although the WP Defendants do not make this argument, one might take the position that even if Tallevi and Cunningham knew all of the information McNellis knew, they would still have arguable probable cause to initiate a prosecution against Plaintiff for criminal possession of stolen property in the fifth degree. However, "the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." *Manganiello*, 612 F.3d at 161 (quoting *Colon v. City of New York*, 455 N.E.2d 1248, 1250 (N.Y. 1983)). Given Plaintiff's written and oral statements to officers, I find that a reasonable person would have at least made a further inquiry as to his knowledge before initiating a prosecution against him.

### C. *Claims Against the Moving NYC Defendants*

The Moving NYC Defendants argue that Plaintiff's false arrest and malicious prosecution claims against them should be dismissed because Plaintiff failed to plead their personal involvement in any of the alleged misconduct. As discussed above, only Plaintiff's malicious prosecution claims against Defendants Nieves, McCready, and McLoughlin are within the statute of limitations. Even if the other claims also survived, Plaintiff does not address the Moving NYC Defendants' arguments that they were not personally involved in Plaintiff's arrest or prosecution. (*See generally* Pl.'s Opp.) As such, those claims are dismissed as abandoned. *See Lipton v. Cty. of Orange, NY*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) (holding that a court "may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed"). In any event, the Second Amended Complaint contains no allegations of any personal involvement by any of the Moving NYC Defendants in connection with Plaintiff's arrest and prosecution. Therefore, even if the false arrest and malicious prosecution claims were timely, those claims would be dismissed for failure to state a claim. *See Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation.").

### V. <u>Conclusion</u>

For the reasons stated herein, the WP Defendants' motion to dismiss, (Doc. 96), is GRANTED IN PART and DENIED IN PART. Specifically, the WP Defendants' motion to dismiss is granted with respect to (1) Plaintiff's claims against the City of White Plains, (2) Plaintiff's claims against Defendants Tallevi and Cunningham in their official capacities, and (3)

Plaintiff's false arrest claims against Tallevi and Cunningham in their personal capacities. The WP Defendants' motion to dismiss is denied with respect to (1) Plaintiff's § 1983 conspiracy claim against Defendants Tallevi and Cunningham in their personal capacities, and (2) Plaintiff's malicious prosecution claims against Defendants Tallevi and Cunningham in their personal capacities. The Moving NYC Defendants' motion to dismiss, (Doc. 101), is GRANTED.

The Clerk of Court is respectfully directed to terminate the open motions at Docs. 96 and 101. The WP Defendants shall file their Answer to the Second Amended Complaint within twenty-one (21) days of the issuance of this Opinion & Order.

SO ORDERED.

Dated: September 28, 2018
     New York, New York

Vernon S. Broderick
United States District Judge