UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                        :

DANIEL FORTE,                 :

                     :

                 Plaintiff,   :               16-CV-560 (VSB)

                - against -     :          **OPINION & ORDER**

                     :

THE CITY OF NEW YORK, *et al.*   :

                     :

              Defendants.  :

                     :
-------------------------------------------------------X

<u>Appearances</u>:

Daniel Forte
Stormville, New York
*Pro se Plaintiff*

Daniel L. Passeser
Nicholas D. Manningham
Ben N. Kuruvilla
John Edmund Schemitsch
New York City Law Department
New York, New York
*Counsel for NYC Defendants*

John J. Walsh, II
Paul E. Svensson
Hodges Walsh & Burke, LLP
White Plains, New York
*Counsel for White Plains Defendants*

<u>VERNON S. BRODERICK, United States District Judge</u>:

      Pro se Plaintiff Daniel Forte ("Plaintiff" or "Forte") brings this action against Defendants

City of New York, City of White Plains, Detective Brian McNellis ("McNellis"), Detective

Edward Garrity ("Garrity"), Officer Kenneth Tallevi ("Tallevi"), and Officer Jamar Cunningham

("Cunningham") (collectively, "Defendants"), alleging violations of 42 U.S.C. § 1983 for

unlawful search and seizure, malicious prosecution, false arrest, deprivation of the right to a fair trial, fabrication of evidence, and conspiracy to violate civil rights.  Before me are the motions for summary judgment filed by Defendants City of White Plains, Tallevi, and Cunningham (collectively, the "WP Defendants") and Defendants City of New York, McNellis, and Garrity (collectively, the "NY Defendants").  Because I find that no reasonable trier of fact could find for Plaintiff on his § 1983 claims, Defendants' motions for summary judgment are GRANTED, and Plaintiff's cross motion is DENIED.

## I.   **Background**[1]

In the spring of 2014, McNellis of the New York City Police Department ("NYPD") was assigned to investigate a complaint regarding a home invasion and robbery that occurred on March 8, 2013, at an apartment in Manhattan.  (R56.1 WP ¶ 1; R56.1 NY ¶ 1.)[2]  A cell phone was among the items stolen during the robbery.  (R56.1 NY ¶ 2.)  In order to locate the stolen cellphone, McNellis secured a court order to permit the Technical Assistance Response Unit ("TARU") of the NYPD to conduct "Trap and Trace" surveillance on the telephone number of the cellphone stolen phone.  (*Id*. ¶ 3.)  On or about April 23, 2013, the TARU determined that the cell number was in use in the City of White Plains.  (*Id*. ¶ 4.)  After a search in the NYPD databases, McNellis found that Plaintiff submitted an insurance claim with the same cellphone number as the stolen phone.  (*Id*. ¶ 6.)  McNellis further found that Plaintiff had a New York state driver's license which identified his address.  (*Id*. ¶ 7.)  On April 24, 2013, McNellis and Garrity arrived at the address listed on Plaintiff's license, along with members of the TARU; by

---

[1] This section is drawn from the various submissions of the parties in order to provide background and context for the motions and is not intended as a recitation of all material undisputed facts.  Unless otherwise indicated, the facts set forth in this section are undisputed.

[2] "R56.1 WP" refers to WP Defendants' statement of undisputed facts pursuant to Local Civil Rule 56.1.  (Doc. 191.)  "R56.1 NY" refers to NY Defendants' statement of undisputed facts pursuant to Local Civil Rule 56.1.  (Doc. 198.)

using electronic equipment, the TARU determined that the cell phone of interest was present in the building, on either the fifth, sixth, or seventh floor. (*Id*. ¶¶ 8–9.)[3] As the team proceeded up the stairwell and reached the fifth-floor landing, they encountered a woman, who identified herself as Plaintiff's mother, Luisa Cohen, and reported that she lived on the fifth floor with her son. (*Id*. ¶¶ 11–12.) The officers asked to speak with Plaintiff, and Cohen led the officers inside her apartment. (*Id*. ¶¶ 13–14.) Upon entering the apartment, McNellis observed Plaintiff inside, holding a cell phone sitting on the couch. (*Id*. ¶ 15.) The TARU detectives confirmed that Plaintiff was in physical possession of the stolen cell phone by pinging the phone that Plaintiff was holding. (*Id*. ¶ 16.) Garrity placed Plaintiff under arrest for criminal possession of stolen property, even though Plaintiff voluntarily disclosed that he bought the phone on the website Craigslist. (R56.1 NY ¶ 17; R56.1 WP ¶ 32.) "A search of plaintiff incident to arrest uncovered ten (10) twists of crack cocaine in [his] pocket." (R56.1 NY ¶ 18.) Plaintiff was then transported to the Manhattan Robbery Squad for processing, (*id*. ¶ 19), where McNellis, after reading Plaintiff his Miranda Rights, interrogated him for approximately 5 to 6 hours, (R56.1 WP ¶ 36.) During the interrogation, Plaintiff told McNellis that "he had purchased the phone from a person on Craig's List [sic] somewhere near the Metro-North Train Station in Mamaroneck," but was unable to access his email on a computer to present his communication with the phone seller. (*Id*. ¶¶ 42, 44.) Meanwhile, McNellis was unable to reach the victims of the home invasion robbery to arrange a line-up. (*Id*. ¶ 40.) Eventually, after speaking with McNellis, the New York County District Attorney's Office declined to prosecute Plaintiff for the home invasion robbery and indicated that the New York County District Attorney's Office could

---

[3] NY Defendants' statement of undisputed facts lists the date as April 24, 2014, which given contextual information, appears to be a typo.

not mount a prosecution for the stolen phone because Plaintiff possessed it in Westchester. (R56.1 WP ¶¶ 48, 50; R56.1 NY ¶ 20.)

Thereafter, McNellis decided to transfer Plaintiff to White Plains.  He contacted the White Plains Police Department ("WPPD") and talked with Lieutenant Dennis Doherty ("Doherty") of the WPPD on the phone.  McNellis informed Doherty of Plaintiff's arrest, as well as the stolen phone and the crack found on him at the time of his arrest.  (R56.1 WP ¶ 57.) McNellis did not tell Doherty that Plaintiff claimed he bought the phone on Craigslist, or that the New York County District Attorney's Office had refused to press charges.  (*Id*. ¶¶ 58, 60.) Doherty then told Sergeant Kevin Farrelly ("Farrelly") of the WPPD about Plaintiff's arrest, who in turn directed Tallevi and Cunningham to prepare to take Plaintiff into custody.  (*Id*. ¶¶ 61–64.) McNellis then arrived at White Plains, released Plaintiff to the custody of the WPPD, and spoke with Doherty in the general presence of Cunningham and Tallevi.  (*Id*. ¶ 69.)  McNellis also gave a verbal statement to Tallevi, which Tallevi typed and McNellis signed under oath.  (*Id*. ¶ 79.) Subsequently, Westchester County charged Plaintiff with unlawful possession of stolen property in the fifth degree and unlawful possession of a controlled substance in the seventh degree.[4] (R56.1 NY. ¶ 25.)  These unlawful possession charges were dismissed on November 18, 2013. (*Id.* ¶ 32.)

During Plaintiff's detention at the WPPD, detectives from Greenburg Township visited him to investigate a homicide unrelated to the home robbery.  (*Id*. ¶ 26.)  On May 21, 2013, Plaintiff was indicted for crimes related to the homicide of Kjutim Rushiti.  (*Id*. ¶ 27.)  During that criminal proceeding, Plaintiff moved to suppress any evidence recovered from his person at

---

[4] The NY Defendants state that the charge for possession of stolen property was in the second degree, which appears to be a typographical error because the Superseding Misdemeanor Information they cite to shows that the charge was possession of stolen property in the fifth degree.  (Doc. 196 Ex. D.)

the time of his arrest on April 24, 2013, by the NYPD, on the basis that this arrest was unconstitutional and the resulting evidence was tainted.  (*Id.* ¶ 28.)  On January 13, 2014, after a three-day evidentiary hearing in which McNellis, Forte, and Forte's mother testified, Justice Barry E. Warhit of the Westchester County Supreme Court ruled that the arrest by the NYPD was based on probable cause, and "that the arrest did not unconstitutionally occur within Plaintiff's home."  (*Id.* ¶¶ 29–30.)  Plaintiff was subsequently convicted of murder in the first degree and is currently serving a prison sentence of twenty-five years to life.  (*Id.* ¶ 31.)

## II.  **Procedural History**

I assume familiarity with the procedural history set forth in my Opinion & Order granting in part and denying in part Defendants' motions to dismiss filed on September 28, 2018.  (Doc. 114.)  After I issued that Opinion & Order, the WP Defendants filed their answer on November 13, 2018.[5]  (Doc. 120.)

Following that Opinion & Order, the parties engaged in discovery.  On June 11, 2021, the WP Defendants filed their motion for summary judgement with supporting documents.  (Docs. 190–92).  On June 17, 2021, the NY Defendants filed their motion for summary judgement with supporting documents.  (Docs. 195–98).  On June 21, 2021, Plaintiff filed his motion for summary judgement with supporting documents.  (Docs. 199–201).  The WP Defendants filed their opposition to Plaintiff's cross motion on August 3, 2021.  (Doc. 205.)  The NY Defendants filed their opposition to Plaintiff's cross motion on August 13, 2021.  (Doc. 208.)  Plaintiff filed his opposition to Defendants' motions for summary judgement on October 7, 2021.  (Docs. 213–16.)  The NY Defendants filed their reply to Plaintiff's opposition on October 22, 2021.  (Doc. 221.)  The WP Defendants did not file a reply.

---

[5] The NY Defendants had already filed their answer on August 23, 2017.  (Doc. 94.)

### III.   **Legal Standard**

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists; if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and

supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

In considering a summary judgment motion, a court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

Pro se litigants are afforded "special solicitude" on motions for summary judgment. *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). Courts read the pleadings, briefs, and opposition papers of pro se litigants "liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks omitted); *see also Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (stating that the submissions of pro se litigants are "held to less stringent standards than formal pleadings drafted by lawyers" (internal quotation marks omitted)); *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 577 (S.D.N.Y. 2008) ("District courts should read the pleadings of a pro se plaintiff liberally[,] and [the] same principles apply to briefs and oppositions submitted by pro se litigants." (internal quotation marks omitted)). However, "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (stating that the obligation to read pro se pleadings liberally "does not relieve plaintiff of his duty to meet the requirements

necessary to defeat a motion for summary judgment").  "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment."  *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## IV.   Discussion

Section 1983 establishes liability for deprivation "of any rights, privileges, or immunities secured by the Constitution" under the color of state law.  42 U.S.C. § 1983.  Plaintiff brings § 1983 claims for false arrest/imprisonment, fabrication of evidence and deprivation of the right to a fair trial, malicious prosecution, and conspiracy to violate civil rights.  Defendants argue that they are entitled to summary judgment on all of these claims.  I will address each claim in turn.

### A.   *False Arrest/Imprisonment*

#### 1.   Applicable Laws

"Under New York law, false arrest and false imprisonment are one and the same, and the elements for both are the same as for a false arrest claim under § 1983."  *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 515 (S.D.N.Y. 2013); *see also Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012).  To establish a false arrest claim under New York law, a plaintiff needs to show that "the defendant intentionally confined him without his consent and without justification."  *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (citation omitted).

Probable cause "is an absolute defense to a false arrest claim."  *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006).  Probable cause is "evaluated on the totality of the circumstances," *Jenkins v. City of New York*, 478 F.3d 76, 90 (2d Cir. 2007), and exists "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed

or is committing a crime;" it "depends, in the first instance, on state law." *Dancy*, 843 F.3d at 107 (citations omitted). Probable cause "'does not demand hard certainties or mechanistic inquiries'; nor does it 'demand that an officer's good-faith belief that a suspect has committed or is committing a crime be correct or more likely true than false.'" *Fernandez v. City of New York*, 457 F. Supp. 3d 364, 384 (S.D.N.Y. 2020) (quoting *Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016)). "Rather, it requires only facts establishing 'the kind of fair probability' on which a 'reasonable and prudent' person, as opposed to a 'legal technician,' would rely." *Id*. In a § 1983 false arrest case, the defendant bears the burden of proving probable cause. *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003).

"Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Marvel Characters, Inc.*, 310 F.3d at 288. "Because the Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to accord state judgments the same preclusive effect those judgments would have in the courts of the rendering state, New York preclusion law applies." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 93 (2d Cir. 2005). "In New York, collateral estoppel has two essential elements. First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." *Jenkins*, 478 F.3d at 85 (citation omitted).

"The party asserting collateral estoppel bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate the issue in the prior proceeding." *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995); se*e also Lawtone-Bowles v.*

*City of N.Y., Dep't of Sanitation*, 22 F. Supp. 3d 341, 348 (S.D.N.Y. 2014).

## 2. Application

Plaintiff asserts that he was arrested three times on April 24, 2013, initially at his apartment, then at the Manhattan Robbery Squad, and lastly by the WP Defendants. (Mem. Forte 4–5.)[6] He asserts false imprisonment and arrest only based on the second arrest and detention at the Manhattan Robbery Squad. (*Id.* 5.)

### a. Collateral Estoppel

The NY Defendants argue that Plaintiff's false arrest claim is barred by the doctrine of collateral estoppel, because the same issue—whether the NYPD had probable cause to arrest the Plaintiff—has been litigated before Judge Warhit of the Westchester County Supreme Court during Plaintiff's suppression hearing in state court. (*See* R56.1 NY ¶¶ 29–30.) I agree.

"It is well-settled that collateral estoppel may bar a plaintiff from bringing an action in federal court pursuant to 42 U.S.C. § 1983." *Barnes v. City of Monroe*, 85 F. Supp. 3d 696, 723 (W.D.N.Y. 2015). A state court's determination that an arrest was supported by probable cause is generally entitled to preclusive effect. *See, e.g.*, *Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 426 (S.D.N.Y. 2012) ("Settled authority establishes that where, as here, a state court has determined that the warrantless search or seizure was supported by probable cause, the defendant may not relitigate that determination in a federal Section 1983 action." (citation omitted)); *Mitchell v. Hartnett*, 262 F. Supp. 2d 153, 155 (S.D.N.Y. 2003) (finding a § 1983 false arrest claim barred because the plaintiff had a full and fair opportunity to litigate this claim in the state court during a suppression hearing, and failed to prevail); *Brown v. De Fillipis*, 717 F. Supp. 172,

---

[6] "Mem. Forte" refers to the memorandum of law in support of Plaintiff's motion for summary judgement. (Doc. 201.)

179 (S.D.N.Y. 1989) (same).

Plaintiff raised the question of whether his arrest was supported by probable cause before Judge Warhit and is barred from relitigating the question here.  Both components of New York's collateral estoppel test are satisfied.  An "identical issue necessarily . . . [was] decided in the prior action," *Jenkins*, 478 F.3d at 85, because Judge Warhit had to resolve the issue of probable cause presented by Plaintiff's suppression motion as part of the criminal case against Plaintiff. The question in that matter, whether the Plaintiff's April 24, 2013 arrest and detention was supported by probable cause, (Decision 13 ("[T]his court's probable cause analysis relates solely to Defendant's arrest on April 24, 2013, for criminal possession of stolen property and criminal possession of a controlled substance")),[7] is the same issue on which the NY Defendants seek to invoke collateral estoppel, (Mem. NYC 10–13 (asserting there was probable cause for the April 24, 2013 arrest).[8]   This question is also decisive of this action.  "[A]n issue is decisive in the present action if it would prove or disprove, without more, an essential element of any of the claims set forth in the complaint."  *Curry v. City of Syracuse*, 316 F.3d 324, 332 (2d Cir. 2003) (internal quotation marks omitted).  Probable cause is a complete defense to Plaintiff's false arrest claims.  *Jenkins*, 478 F.3d at 84.

Plaintiff also had a full and fair opportunity to litigate the issue.  Although it is Plaintiff's burden, he offers nothing to suggest that he was prevented from fully and fairly contesting the lawfulness of his arrest in state court.  Moreover, the record demonstrates that Plaintiff had a full and fair opportunity to litigate the issue, as Judge Warhit came to this conclusion after a three-

---

[7] "Decision" refers to the Decision and Order by Judge Warhit in Plaintiff's criminal case, *People v. Forte*, Indictment No. 13-0573.  It is submitted in this case as an exhibit attached to the declaration of John Schemitsch in support of the NY Defendants' motion for summary judgement.  (Doc. 196 Ex. E.)

[8] "Mem. NYC" refers to the NYC Defendants' memorandum of law in support of their motion for summary judgment.  (Doc. 197.)

day evidentiary hearing during which McNellis, Forte, and Forte's mother testified and during

which Forte was represented by counsel.[9]  Although "'[a] full and fair opportunity to litigate' an

issue is not had if appellate review is unavailable," *Blue v. City of New York*, 14-CV-7836

(VSB), 2018 WL 1136613, at *9 (S.D.N.Y. Mar. 1, 2018) (citing *Johnson v. Watkins*, 101 F.3d

792, 794 (2d Cir. 1996)), here, Plaintiff does not indicate that there was any barrier to appealing

his conviction and my own review of the record has revealed no such barrier to appeal.[10]  *Cf.*

*Daniel v. Orlando*, 16-CV-1418 (PKC) (RML), 2019 WL 1791517, at *4 (E.D.N.Y. Apr. 24,

2019) (findings in the state court pre-trial suppression hearing not given preclusive effect

because the plaintiff was ultimately acquitted and could not appeal the finding).  Plaintiff is thus

collaterally estopped from contesting Judge Warhit's probable cause determination.

---

[9] In the Rule 56.1 Statement in support of his motion for summary judgment, Plaintiff, for the first time, asserts that his counsel "was not prepared and did not argue a proper defense of [Plaintiff's] arrest and seizure by N.Y.P.D." (Doc. 213 ("R56.1 Forte") ¶ 5.)  "Courts in this circuit . . . have held that an allegation of ineffective assistance of counsel cannot bar the application of collateral estoppel principles to a claimant's Fourth Amendment claims." *Santagata v. DiGregorio*, No. 17CV3053PKCCLP, 2023 WL 2613606, at *8 (E.D.N.Y. Mar. 23, 2023).  While there may be cases where counsel is so ineffective as to deprive a person of a full and fair opportunity to litigate the issues, Plaintiff's conclusory and unsupported assertions do not provide grounds to reach this question.  Although Plaintiff cites to the "Criminal Court Pretrial Hearing" attached to his declaration, (which is a portion of the transcript of a hearing before Judge Warhit, (Doc. 215, Ex. Y)), Plaintiff does not explain why this portion of the transcript demonstrates that his counsel was not prepared.  After examining the transcript, I find nothing that suggests that Plaintiff's counsel was "not prepared and did not argue a proper defense."  (R56.1 Forte ¶ 5.)  Additionally, nothing in Plaintiff's submissions suggests that he or counsel raised the issue of ineffective assistance in state court proceedings.

[10] It appears that Forte initiated an appeal, *see The People, etc., respondent, v. Daniel L. Forte, appellant.*, No. 2014-06918, 13-00573, 2014 WL 5470923 (N.Y. 2d Dep't App. Div. Oct. 29, 2014), but I have found no evidence that this appeal was actually prosecuted or that any decision reversed or otherwise considered Judge Warhit's probable cause determination.  Additionally, while the criminal possession charges against Forte were dismissed, (R56.1 NY ¶ 32), this is not a barrier to the application of collateral estoppel here.  The fact that charges against a defendant are dropped in one case (and so render findings in that case not fully and fairly litigated under *Johnson*, 101 F.3d at 792) does not prevent a court in a matter from giving preclusive effect to determinations in a separate case about the conduct in that dismissed case, such as the existence of probable cause in that dismissed case, so long as the issue was fully and fairly litigated in that separate case.  *See, e.g.*, *Blue*, 2018 WL 1136613, at *9 (dismissal of charges did not preclude application of collateral estoppel where a determination of probable cause to arrest on those charges was made in the context of a separate, appealable proceeding).  Thus, the fact that Judge Warhit made the probable cause determination about an arrest based on criminal possession charges that were later dismissed in the context of his ruling in a separate murder proceeding against Plaintiff is no barrier to giving that finding preclusive effect.

b.  Probable Cause

Even if Plaintiff's false arrest claim was not precluded by collateral estoppel, it still must be dismissed, because I find that there was probable cause for his arrest and detention.  The facts that support a probable cause determination include:  (1) the search conducted by the NYPD in the database revealed that the cellular phone number Plaintiff used was the same phone number of the cellphone that was stolen during the home invasion robbery, (R56.1 NY ¶ 6); (2) upon arriving at the address shown on Plaintiff's driver's license, the TARU determined that the cell phone of interest was present inside the building, (*id*. ¶ 9); and (3) after being let into the apartment by Plaintiff's mother, the NYPD found Plaintiff sitting on the couch with a cell phone determined by the TARU to be the stolen cellphone, (*id*. ¶¶ 15–16).  Given the totality of circumstances, I find that the decision of the NYPD, particularly of McNellis and Garrity, to arrest and detain Plaintiff was based on reliable, trustworthy evidence from investigation, and that an officer of reasonable caution would be justified in believing, with "fair probability" that Plaintiff was in knowing possession of stolen property.  *Dancy*, 843 F.3d at 107; *Fernandez*, 457 F. Supp. 3d at 384.

Plaintiff argues that McNellis and Garrity "upon investigation realized that plaintiff did not steal the cell phone, nor did he have knowledge of the cell phone being stolen." [11]  (Mem. Forte 6.)  There is nothing to support this assertion.  First, there is nothing to suggest that, at the time of the arrest, McNellis or Garrity knew for certain that Plaintiff had no knowledge of the phone being stolen; the only information McNellis or Garrity had was Plaintiff's self-serving

---

[11] Under New York Penal Law § 165.40, "[a] person is guilty of criminal possession of stolen property in the fifth degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof."

assertion that he "bought the phone off 'Craigslist.'"[12]  (R56.1 WP ¶ 32.)  Second, "while intent

is an element of the crime which must be proved at trial, it is not necessary in order to establish

probable cause to arrest."  *Grant v. City of New York*, 500 F. Supp. 2d 211, 215 (S.D.N.Y. 2007)

(finding probable cause to arrest the § 1983 plaintiff for possession of forged instrument based

solely on the victims' identification that the plaintiff purchased phone cards with the counterfeit

bills).  In other words, it was not necessary for the NYPD officers to establish that Plaintiff had

knowledge that the phone was stolen in order to lawfully arrest him.  *See, e.g.*, *Diop v. City of*

*New York*, 50 F. Supp. 3d 411, 424 (S.D.N.Y. 2014) (finding probable cause to arrest the § 1983

plaintiff for possession of stolen property "based solely on the robbery victim's identification of

the purse recovered from [the plaintiff]'s vehicle as the purse that had been stolen from her.").

        Plaintiff also challenges McNellis' decision to transfer him to the WPPD for arrest after

the New York District Attorney declined to prosecute him for robbery.  (Mem. Forte 5.)  Plaintiff

alleges that after McNellis told him that he would be brought to White Plains, Plaintiff asked

McNellis whether he was under arrest, and McNellis stated that he was not, but still placed

Plaintiff in handcuffs and ankle shackles.  (*Id.* 4.)  However, Plaintiff does not identify the

evidence that supports these allegations; nor are these facts in Plaintiff's Rule 56.1 statement or

---

[12] Even if McNellis or Garrity credited Plaintiff's assertion that he bought the phone off Craigslist, the mere
assertion that a person legitimately obtained property need not defeat a finding of probable cause where other factors
suggest the property may be stolen.  Probable cause may exist to arrest someone for the receipt or possession of
stolen property, despite an innocent explanation for the property, where other factors support a finding of probable
cause.  *Krause v. Bennett*, 887 F.2d 362, 371 (2d Cir. 1989).  In *People v. Thurman*, for example, defendants'
conduct and possession of likely contraband supported a finding of probable cause to arrest defendants for
possession of stolen property notwithstanding defendants' assertion that they had found the items in question, 438
N.Y.S.2d 312, 314 (4th Dep't 1981); *see also Rodriguez v. City of New York*, No. 97 CIV. 0217 (MGC), 1999 WL
58911, at *5 (S.D.N.Y. Feb. 8, 1999)("[P]ossession of goods that were allegedly stolen recently strengthens the
inference that he knew they were stolen").  Similarly, Plaintiff's assertion that he received the recently stolen phone
off Craigslist does not defeat a finding of probable case given the other factors known to the police, including that
the stolen cell phones telephone number continued to be used after it was stolen.  In any event, later in the
investigation the NYPD provided Plaintiff with a computer so that he could show them his communication with the
Craigslist seller, but Plaintiff was unable to access his email.  (R56.1 WP ¶ 44.)

readily identified in supporting declarations or papers.  I find that the conclusory allegations are not sufficient to show that the NYPD unlawfully detained Plaintiff so that he could be arrested and processed by WPPD.  *See Lee,* 902 F. Supp. at 429 ("[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment.")  Consequently, Plaintiff's false imprisonment claims based on the transfer of custody also fail.[13]

Alternatively, to the degree that Plaintiff's claim is based on unreasonably prolonged pretrial detention as set out in *Russo v. City of Bridgeport*, 479 F.3d 196, 205 (2d Cir. 2007), that claim is unsupportable.  *Russo* sets out a right to be protected "from a sustained detention stemming directly from the law enforcement officials' refusal to investigate available exculpatory evidence."  *Id.* at 208.  "Russo has been narrowly construed to involve situations where a law enforcement official has mishandled or suppressed readily available exculpatory evidence, which resulted in the plaintiff's unreasonably long incarceration."  *Jackson v. City of New York*, 29 F. Supp. 3d 161, 179 (E.D.N.Y. 2014).  Thus, prolonged detention claims based on police officers' conduct have consistently failed when there is no evidence that officers concealed evidence from either the prosecutor or defendant.  *See, e.g.*, *Harewood v. Braithwaite*, 64 F. Supp. 3d 384, 403 (E.D.N.Y. 2014) (declining to find a prolonged detention where, among other factors, officers had not suppressed evidence); *Clase v. United States*, No. 17CV02247MKBST, 2020 WL 6438757, at \*7 (E.D.N.Y. Nov. 2, 2020), report and

---

[13] Even if Plaintiff's arrest was without probable cause, the police officers would still be immune from liability under the doctrine of qualified immunity, which protects an officer "so long as he had arguable probable cause to arrest, which exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  *Dancy*, 843 F.3d at 107.  I find that given the circumstances, it would be objectively reasonable for McNellis to believe that probable cause existed.  For a similar reason, qualified immunity applies to Plaintiff's malicious prosecution claim.  *See Diop*, 50 F. Supp. at 422 (S.D.N.Y. 2014) (applying qualified immunity to a malicious prosecution claim).

recommendation adopted, No. 17CV2247MKBST, 2020 WL 7021593 (E.D.N.Y. Nov. 30, 2020)

(same); *Gutierrez v. New York*, No. 18-CV-3621 (MKB), 2021 WL 681238, at *21 (E.D.N.Y.

Feb. 22, 2021) ("The Court grants Defendants' motion for summary judgment because there is

no evidence in the record indicating that Defendants mishandled or suppressed any exculpatory

evidence."); *Brightman v. NYC Police Officer Zuel Clement*, No. 16 CIV. 2507 (LGS), 2017 WL

1417301, at *3 (S.D.N.Y. Apr. 20, 2017) ("The Amended Complaint does not allege facts that, if

true, would show that law enforcement officials mishandled or suppressed exculpatory

evidence"); *Benn v. City of New York*, No. 18 CIV. 722 (LGS), 2021 WL 3193022, at *5

(S.D.N.Y. July 28, 2021) ("Plaintiff has not adduced evidence sufficient for a reasonable jury to

conclude that exculpatory evidence was mishandled or suppressed.").

Plaintiff has identified no mishandled or suppressed evidence.  Indeed, his own

memorandum indicates that the New York County District Attorney's Office declined to

prosecute him, (Forte Mem. 4–5), and Defendants' Rule 56.1 statements indicate that this was

because of the evidence officers provided to prosecutors, (R56.1 WP ¶¶ 48–49; R56.1 NY ¶ 20).

In the absence of any evidence of suppression or mishandling of evidence, Plaintiff's detention

claims predicated on *Russo* cannot lie.

### B. *Fabrication of Evidence and Fair Trial*

"It is firmly established that a constitutional right exists not to be deprived of liberty on

the basis of false evidence fabricated by a government officer."  *Zahrey v. Coffey*, 221 F.3d 342,

355 (2d Cir. 2000).  Where "an officer's post-arrest fabrication of evidence results in a restraint

on the plaintiffs liberty," the plaintiff can bring a § 1983 claim for violation of the constitutional

right to fair trial based on fabrication of evidence "even where no trial took place."  *Harris v.

City of New York*, 222 F. Supp. 3d 341, 351 (S.D.N.Y. 2016).  "[T]o establish a section 1983

fair-trial claim based on fabrication of evidence, a plaintiff must demonstrate that 'an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result.'" *Smalls v. Collins*, 10 F.4th 117, 132 (2d Cir. 2021) (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279–80 (2d Cir. 2016)). A plaintiff can bring a fair-trial claim based on fabricated evidence as long as the dismissed criminal proceeding "does not impugn an ongoing prosecution or outstanding conviction." *Id.* at 139 (citing *McDonough v. Smith*, 139 S. Ct. 2149, 2158, 2160 (2019)).

Here, the NY Defendants argue that I should dismiss Plaintiff's fair trial claim because the criminal charges on which this claim is based did not result in "favorable termination," as they were simply dismissed without affirmative indication of innocence. (Mem. NYC 15–16.) However, the Second Circuit has clarified that a fair trial claim does not require an affirmative indication of innocence, but only a showing that the dismissed criminal proceeding "does not impugn an ongoing prosecution or outstanding conviction." *Smalls*, 10 F.4th. at 139. There is no evidence suggesting that the dismissal of Plaintiff's criminal charges impugned an ongoing prosecution or outstanding conviction; therefore, I will not dismiss Plaintiff's fair trial claim for that reason.

However, the claim will be dismissed because Plaintiff has not produced sufficient evidence to show that the alleged "fabricated evidence" was fabricated. Plaintiff claims that "Defendant McNellis . . . signed a witness statement stating false material of facts," (Forte Mem. 7),[14] concerning the statement McNellis signed upon arriving at the WPPD, (*see* R56.1 WP ¶ 79;

---

[14] "Forte Mem." refers to the Memorandum of Law Submitted on behalf of Plaintiff Daniel Forte – Pro Se In Support of Motion for Summary Judgment. (Doc. 201.)

*see also* Doc. 196 Ex. C ("Statement")).  In the Statement, McNellis described the investigation

of the location of the stolen phone and the incidents on the day of Plaintiff's arrest; he

specifically stated that when he entered the apartment, Plaintiff "was sitting on the couch with

the [suspect stolen] phone in hand," that he subsequently put Plaintiff "under arrest for Criminal

Possession of Stolen Property," and that he recovered from Plaintiff "a clear piece of plastic

containing . . . an off white chunky substance believed to be cocaine" during a search.

(Statement 3.)[15]  Plaintiff seems to suggest that McNellis falsely stated that Plaintiff knew the

cellphone was stolen, (*see* Mem. Forte 9 ("During the investigation it was established plaintiff

did not . . . have any knowledge that cell phone was stolen")); however, nothing in the statement

mentioned whether Plaintiff had knowledge that the phone was stolen.  Further, the record shows

that during the hearing before Judge Warhit, McNellis truthfully acknowledged that Plaintiff told

him, during the interrogation, that the phone was "bought . . . off of Craigslist" and that he

"wasn't involved in any home invasion robbery."  (McNellis State Tr. 26:22-23)[16]  Nothing in

the record shows that McNellis, or any of the other Defendants, made false statements of fact, or

otherwise fabricated evidence.  Therefore, Plaintiff's allegation that McNellis somehow misled

the prosecution in his criminal case is not supported by sufficient evidence, and I find that no

reasonable jury could find for him on this claim.

### C.  *Malicious Prosecution*

In order to prevail on a § 1983 malicious prosecution claim, a plaintiff must demonstrate

"(i) the commencement or continuation of a criminal proceeding against her; (ii) the termination

of the proceeding in her favor; (iii) that there was no probable cause for the proceeding;" "(iv)

---

[15] The page numbers cited to for this document refer the page of the PDF document on ECF.

[16] "McNellis State Tr." refers to the transcript of the proceeding in the New York state court before Judge Warhit where McNellis testified.  (Doc. 196 Ex. A.)

that the proceeding was instituted with malice;" and (v) "a seizure or other perversion of proper

legal procedures implicating the claimant's personal liberty and privacy interests under the

Fourth Amendment." *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (internal

quotation marks omitted).  As with false arrest, probable cause is a complete defense to a claim

of malicious prosecution.  *Manganiello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir.

2010).  "Probable cause, in the context of malicious prosecution, has also been described as such

facts and circumstances as would lead a reasonably prudent person to believe the plaintiff

guilty." *Soomro v. City of New York*, 174 F. Supp. 3d 806, 814 (S.D.N.Y. 2016) (quoting *Boyd

v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003)).  "Where probable cause existed for the

arrest itself, a plaintiff pursuing a malicious prosecution claim must establish that probable cause

somehow 'dissipated' between the time of arrest and the commencement of the prosecution."

*Gaston v. City of New York*, 851 F. Supp. 2d 780, 793 (S.D.N.Y. 2012).

  The underlying crimes that form the basis for Plaintiff's malicious prosecution claims are

unlawful possession of stolen property in the second degree and unlawful possession of a

controlled substance in the seventh degree filed by the County of White Plains.  (R56.1 NY ¶ 25;

Forte Mem. 8–12).  Plaintiff's malicious prosecution claims fail because, as discussed, there was

probable cause for his arrest on these offenses.  *See, e.g.*, *Jeanty v. Cerminaro*, No. 21-1974-CV,

2023 WL 325012, at *6 (2d Cir. Jan. 20, 2023) (declining to address *Thompson*'s favorable

termination analysis where appellant could not establish the absence of probable cause); *Jessamy

v. Jakasal*, No. 21-214, 2022 WL 1669512, at *2 (2d Cir. May 26, 2022) (noting that the

existence of probable cause provide a complete defense to a claim of malicious prosecution).

With regard to the possession of stolen property claim, as I found above, there was probable

cause for the prosecution because (1) there was probable cause for the arrest; (2) Defendants did

not submit any false evidence to support the prosecution; and (3) Plaintiff does not present evidence that suggests that the probable cause "'dissipated' between the time of arrest and the commencement of the prosecution." *Gaston*, 851 F. Supp. 2d at 793.

To the degree Plaintiff suggests that new information obtained in the investigation about the weight of drugs found on his person dissipated the probable cause, that argument is unfounded. The NYPD found 10 "twists" of crack cocaine in Plaintiff's pocket during the search incident to the arrest. (R56.1 NY ¶ 18.) Plaintiff does not argue that this was not contraband. Instead, Plaintiff contends that "McNellis never states or dictates how much the narcotics seized weighed nor did he ever state to weighing the drugs seized." (Mem. Forte 11.) However, the record includes a laboratory test done on the seized material that showed that the cocaine found on Plaintiff was less than 500 milligrams, (R56.1 WP ¶ 119); subsequently, "McNellis signed a Supplemental Information as to the drug charge, based on the lesser weight of cocaine," (*id.* ¶ 118), and Plaintiff was charged accordingly with possession of a controlled substance in the seventh degree, (*see* Doc. 190 Ex. J). Based on these facts, I find that the "facts and circumstances as would lead a reasonably prudent person to believe" that Plaintiff is guilty of that offense, s*ee Soomro*, 174 F. Supp. 3d at 814, and that nothing in the record suggests the dissipation of the initial probable cause.

### D.  *Monell Liability*

Section 1983 applies by its terms "only to individual 'persons' responsible for violating plaintiffs' rights." *Raspardo v. Carlone*, 770 F.3d 97, 115 (2d Cir. 2014) (citation omitted). In other words, it does not impose vicarious liability, and a plaintiff can establish liability against a municipality only if "the challenged acts were performed pursuant to a municipal policy or custom," *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004), or if the

constitutional injury was caused by the municipal "organization's failure to train."  *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *see also Claudio v. Sawyer*, 675 F. Supp. 2d 403, 408 (S.D.N.Y. 2009) ("The failure to train or supervise a municipal employee may be properly thought of as a city policy or custom that is actionable under § 1983." (internal quotation marks omitted)).

Here, Plaintiff alleged in his Second Amended Complaint that "NYPD is aware of and tolerate practices by its subordinates . . . which are inconsistent with afforded constitutional allowance" and that "[t]hese policies and practice . . . are widespread and . . . constitute unwritten NYPD policy & customs."  (SAC ¶ 4).[17]  Plaintiff made similar allegations against the WPPD.  (*Id.* ¶ 10).  These conclusory allegations are not enough to support a *Monell* claim. Moreover, Plaintiff fails to identify any evidence that demonstrates the existence of such a custom or unwritten policy.  Nor has he provided evidence to show that either the City of White Plains or the City of New York failed to train its police officers.  In fact, apart from his own arrest and prosecution, Plaintiff does not point to any other incidents where the City of New York or the City of White Plains violated someone's rights due to a municipal policy or failure to train.  As such, this claim must be dismissed.  *See Holland v. City of New York*, 197 F. Supp. 3d 529, 552 (S.D.N.Y. 2016) (finding the "conclusory allegations that a municipality failed to train and supervise its employees" insufficient to establish municipal liability under § 1983 without factual support); *Thompson v. City of White Plains*, No. 13-cv-6602 (NSR), 2015 WL 4597433, at *5 (S.D.N.Y. July 29, 2015) (finding the § 1983 claim against the municipality fails because it was based on "conclusory, boilerplate allegations" that "relates only to a single incident").

---

[17] "SAC" refers to Plaintiff's Second Amended Complaint.  (Doc. 86)

### E. *Conspiracy*

"To prove a Section 1983 conspiracy, a plaintiff must show:  (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  Thus, there must be "some factual basis supporting a meeting of the minds." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003).  To survive a motion for summary judgment, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Id*.  A claim of conspiracy cannot be grounded on vague and conclusory allegations.  *Brenner v. Heavener*, 492 F. Supp. 2d 399, 404 (S.D.N.Y. 2007).

Additionally, "although the pleading of a conspiracy will enable a plaintiff to bring suit against purely private individuals, the lawsuit will stand only insofar as the plaintiff can prove the sine qua non of a § 1983 action: the violation of a federal right." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995).  Thus, where a plaintiff fails to plead a constitutional violation, a conspiracy claim based on the unsubstantiated constitutional violation must fail as well.  *See, e.g.*, *Gaston v. Gavin*, No. 97 CIV. 1645 (JGK), 1998 WL 7217, at *5 (S.D.N.Y. Jan. 8, 1998), aff'd, 172 F.3d 37 (2d Cir. 1998) ("[T]he plaintiff has failed to allege sufficient facts to support a claim that his First Amendment rights were violated.  Therefore, he cannot succeed on a conspiracy theory because he has failed to allege a sufficient substantive violation."); *Johnson v. Barney*, No. 04 CIV. 10204 (LBS), 2006 WL 3714442, at *3 (S.D.N.Y. Dec. 13, 2006) ("[P]laintiff does not allege any actual violation of his constitutional rights. Therefore, even if the Court were to read an assertion of conspiracy into the complaint, it would also have to be dismissed.")  Thus, as a preliminary matter, Plaintiff's conspiracy allegations fail because, for

the reasons discussed *supra* in § IV.A–D, he cannot maintain an action for a substantive violation of his constitutional rights.

Additionally, no reasonable jury could find for the Plaintiff on his conspiracy claims based on the undisputed facts in the record.  When denying Defendants' motion to dismiss the conspiracy claim, I specifically looked to Plaintiff's allegations that "McNellis engaged in several phone calls while Plaintiff was being interrogated," and noted that there was "a plausible inference that at least one of the calls was with Tallevi or Cunningham and involved an agreement, express or tacit, to bring Plaintiff to White Plains to arrest him."  (Doc. 114 at 23.) Now that discovery has completed, however, I find that, even reviewing the evidence "in the light most favorable" to Plaintiff, *Allen*, 64 F.3d at 79, no reasonable jury could find that Defendants "entered into an agreement, express or tacit, to achieve the unlawful end."  *Webb*, 340 F.3d at 110.

Discovery has uncovered that the "phone calls" that Plaintiff referred to was actually one phone call made by McNellis with Doherty from WPPD.  Specifically, McNellis testified that he called to transfer Plaintiff to the WPPD because the arrest in connection with Plaintiff's possession of the stolen phone and narcotics could not be processed by the City of New York. (McNellis Dep. Tr. 238:2-25.)[18]  Doherty picked up the call from McNellis and was told that Plaintiff "was in possession of a stolen phone and narcotics and the arresting process would be in White Plains."  (*Id.* 238:21-239:13; 242:20-243:2.)  This is confirmed by the testimony from other Defendants.  (*See* Tallevi Dep. Tr. 87:23-88:7 (stating that McNellis and Garrity "would have spoken to Doherty")[19]; Cunningham Dep. Tr. 96:22-97:6 (confirming that Doherty spoke

---

[18] "McNellis Dep. Tr." refers to the transcript of the deposition of McNellis.  (Doc. 190 Ex. E.)

[19] "Tallevi Dep. Tr." refers to the transcript of the deposition of Tallevi.  (Doc. 190 Ex. C.)

with McNellis prior to Plaintiff's arrival at WPPD)).[20]   Tallevi further testified that he first learned of Plaintiff's arrest from Sergeant Farrelly of WPPD, who took orders from Doherty and assigned work to Tallevi and Cunningham regarding Plaintiff's arrest processing.  (*See* Tallevi Dep. Tr. 81:23-82:15 (Tallevi stating that Farrelly told him and Cunningham that the "New York City had a subject in custody [who was] in possession of crack cocaine and a stolen cell phone, and that they needed to process the arrest here in White Plains"); 90:9-19 (Tallevi explaining that Farrelly was the supervisor of him and Cunningham, and took orders from Doherty); *see also* Cunningham Dep. Tr. 80:17-82:7 (confirming Tallevi's statement regarding Farrelly).)  Both McNellis and Garrity stated that they did not talk to anyone in the WPPD—besides Doherty, with whom McNellis talked over the phone—before Plaintiff's arrival in White Plains. (McNellis Dep. Tr. 242:3-9 (McNellis stating that he was not aware of anyone else from NYPD who talked to WPPD regarding Plaintiff's case); Garrity Dep. Tr. 76:4-11 (Garrity stating that he did not participate in any telephone conversations with WPPD while Plaintiff was under the custody of NYPD)).[21]   Neither Tallevi nor Cunningham talked to anyone from the NYPD before Plaintiff's arrival at WPPD.  (Tallevi Dep. Tr. 88:18-24; Cunningham Dep. Tr. 85:8-13.)

Without evaluating the credibility of the Defendants' testimony, I find that Defendants' statements are consistent with each other.  Moreover, Plaintiff does not refute any of these statements; nor does he offer any evidence in support of his conspiracy claim.  Nothing suggests that the Defendants formed a conspiratorial objective.  Although the record shows communications between the NYPD and the WPPD, (*see e.g.* Tallevi Dep. Tr. 94:6-13), "evidence of communications between various defendants [is] not, by itself, sufficient to defeat

---

[20] "Cunningham Dep. Tr." refers to the transcript of the deposition of Cunningham.  (Doc. 190 Ex. D.)

[21] "Garrity Dep. Tr." refers to the transcript of the deposition of Garrity.  (Doc. 190 Ex. F.)

summary judgment on [a] § 1983 conspiracy claim," *Schultz v. Inc. Vill. of Bellport*, No. 08-CV-0930 (JFB) (ETB), 2010 WL 3924751, at *11 (E.D.N.Y. Sep. 30, 2010) (citing *Scotto v. Almenas*, 143 F.3d 105, 114–15 (2d Cir. 1998)).

Plaintiff also points to Tallevi's statement that he did not conduct any independent investigation into Plaintiff's arrest, (Tallevi Dep. Tr. 101:18-21), and the discrepancy between the model of the cell phone initially believed to be stolen and the model of the cell phone Plaintiff possessed when he was arrested, (*id*. 136:2-137:9).[22]  First, these statements at most suggest a non-material error by the police, but do not override my previous finding of probable cause for Plaintiff's arrest and prosecution.  Second, and more importantly, these statements are not sufficient to show a meeting of the minds among McNellis, Garrity, Tallevi and Cunningham.  As a result, the conspiracy claims must be dismissed.  *See Savarese v. City of New York*, 547 F. Supp. 3d 305, 343 (S.D.N.Y. 2021) ("Participation in a conspiracy or the fabrication of evidence . . . cannot be based upon unsubstantiated speculation and conjecture about what could have been said at a certain meeting or in a particular discussion").

## V.     Conclusion

For the reasons explained above, the motions for summary judgment of the NY Defendants and the WP Defendants are GRANTED, and Plaintiff's motion for summary judgment is DENIED.  The Clerk of Court is respectfully directed to mail a copy of this order to the pro se Plaintiff, close all outstanding motions, and terminate the case.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal.  *Cf.*

---

[22] Tallevi's statements during deposition suggests that officers initially believed that the stolen phone was a Samsung Galaxy SII but than later determined that the phone was a Samsung Galaxy III.  (Tallevi Dep. Tr. 136:21-137:5.)

*Coppedge v. United States*, 369 U.S. 438, 444–45 (1962) (holding that an appellant demonstrates

good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated: September 26, 2023
     New York, New York

Vernon S. Broderick
United States District Judge